IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLDPAC, INC., | No. C 06-6079 CW |
| Plaintiff, | ORDER DENYING WORLDPAC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING INTERCO'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| INTERCO PRODUCTS CORP., | |
| Defendant. | |
| INTERCO PRODUCTS CORP., | |
| Counterclaimant, | |
| v. | |
| WORLDPAC, INC., | |
| Counterdefendant. | |

   Plaintiff and Counterdefendant Worldpac, Inc. moves for partial summary judgment.  Defendant and Counterclaimant Interco Products Corp. opposes the motion and cross-moves for partial summary judgment.  Worldpac opposes that motion.  The matter was heard on August 2, 2007.  Having considered all of the papers filed

by the parties, the evidence cited therein and oral argument, the Court denies both motions.

## BACKGROUND

Worldpac and Interco are competitors; both distribute Weber brand carburetors in the United States.

In addition to distributing Weber carburetors, Worldpac imports and distributes other automotive parts for the import specialty repair shop market. It claims that it (and its predecessors) have imported and distributed Weber carburetors in the United States for more than twenty years. The president of Interco, Michael Pace, states that he has had a relationship with the prior owner of the Weber trademark and its successors for over forty years, since as early as 1960.

Beginning in the 1980's and continuing until 2002, Magneti Marelli Powertrain USA, LLC (MM USA) and its parent company, Magneti Marelli Italy (MM Italy), manufactured Weber brand carburetors. MM USA manufactured the carburetors at its plant in Sanford, North Carolina. MM Italy manufactured the carburetors at its plant in Guadalajara, Spain; it owned the Weber trademark. During that time, there were two primary distributors of Weber carburetors in the United States: the Redline division of Impac and Interco Parts Corporation (IPC), which was owned by Mr. Pace. In 1995, Worldpac acquired Impac. Four years later, it acquired IPC. As part of that acquisition, Mr. Pace entered into a two-year non-compete agreement. After the non-compete agreement expired, Mr. Pace formed Defendant Interco.

2

In 2002, MM Italy sold its plant in Spain to Proscesos Mecanicos Espanoles, S.L., (Promek), which then began manufacturing Weber carburetors.  Promek entered into an exclusive distribution arrangement with Interco.  Although the agreement was to expire on December 31, 2005, it could be terminated for cause or if a party became bankrupt or insolvent.  The agreement provided that Promek would sell Weber carburetors in North America exclusively to Interco and that Interco would have the exclusive right to use, display, license and exploit the Weber logo and trademarks in North America.

In 2004, Promek experienced severe financial difficulties.  It became insolvent and filed for bankruptcy protection in the Spanish courts.  The bankruptcy administrators sent a letter to Interco, informing it that the contract was terminated and that Interco still owed Promek € 577,984.41.  Interco brought an action against Promek in the Eastern District of New York and, in a default judgment, was awarded $1,804,740,000 in damages.

During Promek's bankruptcy proceedings, MM Italy entered into negotiations with LCN Mecanica, S.L. (LCN).  According to Worldpac, these negotiations concerned LCN acquiring the manufacturing assets of Promek and obtaining a license to manufacture Weber carburetors in Promek's plant.  On September 21, 2004, Mr. Pace and one of Interco's attorneys attended a meeting in Guadalajara, Spain at LCN's office.  In a letter concerning the meeting, Interco's attorney stated that LCN indicated at the meeting its "intention to respect and comply with the terms" of the Exclusive North America Distribution Agreement between Interco and Promek.  Pace Dec.,

Ex. 20.

On November 4, 2004, Mr. Pace, on behalf of Interco, met with individuals from MM Italy.  According to Mr. Pace, they agreed that Interco would (1) manufacture certain models of Weber carburetors in MM USA's North Carolina plant and (2) continue as the exclusive importer and distributor of all Weber Products in North America.  Mr. Pace states that, because of his long-standing relationship with MM Italy, this agreement was confirmed with a handshake.

Approximately two months later, on January 1, 2005, MM USA and Interco entered into a written manufacturing agreement, providing that MM USA would assemble certain Weber carburetors and sell them exclusively to Interco.  Mr. Pace states that this agreement formalized the manufacturing portion of his and MM Italy's November, 2004 agreement; however, there was no mention of that oral agreement in the January, 2005 written agreement.

In March, 2005, Mr. Pace sent an email to MM Italy, attaching a memo from Interco's counsel advising that there be a direct, written agreement between MM Italy and Interco concerning Interco's exclusive right to enforce and to protect the Weber mark in the United States.  The email stated,

> It is important that if LCN or another company were to acquire the assets of Promek--that they NOT be granted a license to sell Weber carbs etc. into North America--and to require any of the possible customers/distributors outside of North America to also not sell into or to sell to any third party that may/could do so.

Worldpac Ex. F.

Shortly after, however, LCN purchased Promek's plant and inventory and, on April 18, 2005, MM Italy entered into a non-

4

1  exclusive trademark license agreement with LCN.  The agreement gave
2  LCN the right to manufacture Weber carburetors at the plant in
3  Guadalajara; it did not contain express restrictions or limitations
4  on the customers to whom LCN could distribute Weber carburetors in
5  the United States.
6      In May, 2005, Interco and MM USA entered into an Exclusive
7  North American Licensing Agreement.  Mr. Pace states that this
8  agreement memorialized his November, 2004 oral agreement with MM
9  Italy concerning Interco's exclusive importation and distribution;
10 again, however, the agreement does not mention the November, 2004
11 agreement.  The agreement grants Interco the exclusive right to use
12 the Weber trademark in North America and the right to enforce and
13 to protect the Weber trademark from authorized use or exploitation
14 in North America.
15     In July, 2005, LCN and Worldpac entered into a supply and
16 distribution contract, which provided that "LCN gives WORLDPAC the
17 faculties to distribute 'Weber' carburettors [sic] or kits, without
18 exclusivity, and only from LCN's production, in all countries in
19 the world where Weber trademark is registered."  Worldpac Ex. B.
20 Interco contends that LCN entered into this agreement with Worldpac
21 in violation of Interco's exclusive rights.  To support its
22 contention, it relies, in part, on a February, 2007 letter written
23 by MM Italy's general counsel to the general counsel of General
24 Parts International, the parent company of Worldpac:

> [W]hile LCN Mecanica, S.L. ("LCN") has a <u>non-exclusive</u> license to use the WEBER trademark on carburetors in certain territories, including North America, Interco Products Corporation ("Interco") has the <u>exclusive</u> license to use the WEBER trademark in <u>North America</u> and has been nominated by MM

5

> as the exclusive distributor of WEBER branded carburetors in this territory.  The rights granted by MM to LCN and Interco effectively mean that, while LCN can make and sell WEBER branded carburetors in certain territories, to the extent that LCN sells such products within North America, LCN must do so via Interco.

Pace Dec., Ex. 35 (emphasis in original).

Throughout the late summer and fall of 2005, Interco encouraged MM Italy to assign the U.S. registration of the Weber mark to its subsidiary MM USA.  In October, 2005, MM Italy did so.  During this time, Interco also sent Worldpac a letter demanding that Worldpac cease distributing Weber carburetors in North America in recognition of Interco's exclusive license agreement.  Worldpac did not comply.

On November 1, 2005, Interco and MM USA entered into a letter agreement concerning Interco's intention to import the 34DGEC carburetor model from Argelite, a Argentinian manufacturer.  The letter noted that carburetors with the same technical features as the 34DGEC model had been manufactured in the past by WEBER S.p.A. and licensed for production to Argelite on the basis of a license agreement that had expired.  Although it did not know the "current quality situation of Argelite production, process and plants," MM USA conditionally approved Interco's intention to import the 34DGEC model and affix it with the Weber trademark.  Pace Dec., Ex. 32.

Worldpac contends that Interco's actions disrupted the market for Weber carburetors in North America and that, because of this disruption, LCN entered into negotiations with Interco.  The negotiations resulted in a November 15, 2005 letter agreement, reflecting LCN's and Interco's mutual understanding.  Under this

6

agreement, Interco waived any claims it may have had against Worldpac or LCN relating to the July 20, 2005 supply and distribution agreement between the latter two companies and agreed not to bring claims against other LCN customers without prior discussion with LCN; LCN granted Interco "most favored worldwide treatment," agreeing to sell Weber carburetors to Interco at its lowest price; and Interco agreed to stop "all advertisement and/or sales of alterative WEBER trademark products."  Worldpac Ex. J.

According to Worldpac, pursuant to that agreement, LCN sold Interco the same Weber carburetors it currently sells to Worldpac. But, according to Interco, it learned later that the company from which it, and Worldpac, were purchasing Weber carburetors was not LCN Mecanica, the company with which MM Italy had entered into the non-exclusive agreement, but rather LCN Automotive Equipment, S.A. LCN had sent a letter to Weber North American LCC and other customers informing them that, on September 1, 2005, it would change "its name for the activity as WEBER and SOLEX carburettor [sic] manufacturer" to LCN Automotive Equipment.  Pace Dec., Ex. 26.  Interco contends that LCN did more than merely change its name: Dun & Bradstreet reports that show that LCN Mecanica and LCN Automotive Equipment are two separate companies.

In the spring of 2006, Interco contacted eBay Inc. concerning listings of three of Worldpac's customers, who were selling Weber brand carburetors that they had purchased from Worldpac.  Interco asserted to eBay that these sales of Weber brand carburetors violated Interco's intellectual property rights.  Pursuant to eBay policies, those listings were removed.

7

In September, 2006, after MM Italy's assignment of the United States registration of the Weber trademark to MM USA was formally recorded with the United States Patent and Trademark Office, Interco and MM USA entered into a renewed exclusive license agreement, reflecting that MM USA is now the registered owner of the Weber trademark in the United States and confirming that Interco is the exclusive North American distributor.  This agreement contains essentially the same terms as the prior exclusive license agreement between Interco and MM USA.

That same month, Worldpac filed this action against Interco. The amended complaint contains eleven causes of action, alleging false and misleading advertising under the Lanham Act, intentional and negligent interference with contractual relations, intentional and negligent interference with prospective business relations, violations of California's Unfair Business Practices Act, trade libel and common law unfair competition, and seeking a declaration of its rights.  These causes of action are based on Interco's alleged mislabeling of SOLEX brand carburetors, including the 34DGEC carburetor, as Weber carburetors, its alleged false and misleading statements concerning its status as the exclusive distributor of Weber carburetors and its complaints which resulted in eBay removing the listings of Worldpac's customers who sell Weber carburetors.

In October, 2006, Interco filed a single counterclaim, accusing Worldpac of improperly using the Weber trademark in violation of section 43(a) of the Lanham Act.  Worldpac notes that the issue of whether it and its customers have the right to

8

distribute Weber brand carburetors in North America is not raised by Interco's counterclaim.

The next month, LCN terminated its agreement with Interco, less than a year after the parties signed it, claiming that Interco breached the agreement by selling SOLEX brand carburetors as Weber carburetors and by continuing to threaten Worldpac and Worldpac's customers.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts

are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods. Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Id.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210

10

F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. Id.; see also Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991). Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case. UA Local 343, 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." Id. This standard does not change merely because resolution of the relevant issue is "highly fact specific." Id.

## DISCUSSION

Worldpac seeks judgment in its favor that it and its customers have, as a matter of law, the right to distribute in the United States the Weber brand carburetors that Worldpac purchases from LCN. Interco seeks judgment in its favor that Worldpac's claims

11

1 concerning the 34DGEC carburetors are without merit and must be
2 summarily dismissed.
3 I.   Worldpac's Motion for Partial Summary Judgment
4     Worldpac states that its motion is solely directed to whether
5 it can distribute the Weber carburetors that it purchases from LCN.
6 It contends that whether Interco has the exclusive right to
7 distribute Weber carburetors is irrelevant to its motion.
8 According to Worldpac, even if Interco's exclusive license and
9 distribution agreements are valid, which Worldpac disputes,
10 Worldpac still has the right to sell the Weber carburetors it
11 purchases from LCN.
12    The Ninth Circuit explains, "Trademark law generally does not
13 reach the sale of genuine goods bearing a true mark even though
14 such sale is without the mark owner's consent." Am. Circuit
15 Breaker Corp. v. Oregon Breakers Inc., 406 F.3d 577, 585 (9th Cir.
16 2005) (quoting NEC Elecs. v. CAL Circuit Abco, 810 F.2d 1506, 1510
17 (9th Cir. 1987)).  It is designed to protect the consuming public
18 from confusion about a product's source, "which confusion
19 ordinarily does not exist when a genuine article bearing a true
20 mark is sold." Id.  Thus, there is no trademark violation "where
21 the goods being sold are genuine goods bearing a true mark."
22 Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc., 922 F.
23 Supp. 299, 307 (C.D. Cal. 1996) (quoting Polymer Tech. Corp. v.
24 Mimran, 37 F.3d 74, 78 (2d Cir. 1994)).
25    Worldpac claims that the Weber carburetors it imports and
26 sells in the United States are "genuine goods" produced by LCN, a
27 company licensed and authorized to make Weber carburetors.
28

12

According to Worldpac, there is no customer confusion; its customers get exactly what they expect: Weber carburetors. However, in the cases Worldpac cites, such as <u>American Circuit Breaker Corp.</u> and <u>Summit Technologies, Inc.</u>, there was no material dispute of fact concerning whether the products at issue were genuine goods bearing a true mark. For example, in <u>American Circuit Breaker Corp.</u>, the parties stipulated that there were no material differences between the black and gray breakers and that the gray breakers were "genuine" products. 406 F.3d at 585. Here, there is evidence suggesting that Worldpac's products are genuine: Interco purchased the same carburetors as Worldpac did. But there is also evidence suggesting that the products are not genuine.

LCN Automotive Equipment may not be an authorized manufacturer and, thus, the carburetors Worldpac receives may not be authentic. MM Italy entered into a manufacturing and licensing agreement with LCN Mecanica, not LCN Automotive Equipment, and the agreement provides that the license, "as well as the rights and obligations inherent therein, cannot be assigned nor can a sublicense be granted to a third party under any circumstances, not even in the form of a franchise, without the previous consent in writing of the Licensor." Worldpac Ex. A. Although Worldpac contends that LCN Automotive is nothing more than "an administrative convenience" to LCN Mecanica, there is evidence that LCN Mecanica and LCN Automotive may be two separate companies.

Further, there is evidence that carburetors sold by Worldpac do not bear the true Weber trademark; the carburetors are packaged bearing a "Redline Weber" designation.

13

Thus, there are disputes of fact concerning both whether the Weber carburetors Worldpac purchases from LCN are authentic genuine goods and whether Worldpac distributes carburetors bearing a true mark.

Because triable issues of fact remain, Worldpac's motion for partial summary judgment is denied.

II.  Interco's Motion for Summary Judgment

Interco contends that the Court should summarily adjudicate that it has the right to sell the 34DGEC carburetors as Weber carburetors in North America.  According to Worldpac's second and third causes of action, Interco is deceiving actual and potential purchasers of Weber carburetors by falsely advertising and promoting lower quality carburetors made by Argelite, including the 34DGEC carburetor, as Weber carburetors.

Interco argues that the 34DGEC carburetors are of equal, if not better, quality than the models LCN manufactures and sells under the Weber mark.  In support of this contention, Interco cites the November 1, 2005 conditional agreement between it and MM USA concerning the 34DGEC carburetors and a letter from a pleased customer stating that the Weber 34DGEC carburetor is a great complement to the Weber product line and that "at Allstate Carburetor we actually prefer this carburetor over the 32/36 DGEV carburetor."  Pace Dec., Ex. 33.  With Interco's reply, it includes a declaration from Mr. Pace stating that Interco has a substantially lower return rate for its 34DGEC model carburetors than for any other model carburetor that it obtains and that Argelite, the company that manufactures the 34DGEC model

14

carburetors, has ISO 9002 certification.[1]

Worldpac responds that the November 1, 2005 letter agreement permitting Interco to sell the 34DGEC model carburetors in North America is a "naked license" and thus is invalid because it is fatally defective with respect to the necessary quality control.[2] As Interco points out, in certain situations, a licensor can rely upon the licensee's own quality control. See, e.g., Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1018 (9th Cir. 1985). Nonetheless, even if the license is valid, which cannot be determined on the record before the Court, a dispute of fact remains as to whether the 34DGEC model carburetors are of equal quality to other Weber carburetors. Although Mr. Pace assures the Court that they are equal, if not better, Worldpac's executive vice president states that Worldpac has received numerous complaints about the performance of the 34DGEC model from customers who purchased it believing it was a genuine Weber carburetor.

Because triable issues of fact remain, the Court denies Interco's cross-motion for summary judgment.

---

[1] Mr. Pace does not explain the significance of ISO 9002 certification.

[2] Worldpac also states that the parties have not had an opportunity to take discovery concerning the quality of the 34DGEC carburetors manufactured by Argelite. It requests, pursuant to Rule 56(f), that the Court defer ruling on Interco's cross-motion until additional discovery may be had on the subject. Worldpac fails to provide an affidavit supporting its Rule 56(f) request, nor does it show (1) that it has set forth in affidavit form the specific facts that it hopes to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion. State of California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998).

15

CONCLUSION

For the foregoing reasons, Worldpac's Motion for Partial Summary Judgment is DENIED (Docket No. 41).  Interco's cross-motion for partial summary judgment is also DENIED (Docket No. 46).

IT IS SO ORDERED.

Dated: 8/24/07

CLAUDIA WILKEN
United States District Judge